## THE J. M. GUFFEY.

(District Court, E. D. New York. July 30, 1910.)

1. SHIPPING (§ 84*)—EXPLOSION—INJURY TO WORKMEN—CARE REQUIRED.

Where workmen of contractors were engaged in repairing the oil tanks of a steamer at the time one of them was injured by an explosion of oil flowing from a pump they were disconnecting, the workmen and contractors by whom they were employed were bound to use reasonable care in doing the work and in using lights in the tank, according to their experience, to obviate dangers that might be anticipated.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 84.*]

2. SHIPPING (§ 84*)—REPAIRS—INJURIES TO WORKMEN—EXPLOSION—CONTRIBUTORY NEGLIGENCE.

Where the tanks of an oil steamer were about to be repaired, and for this purpose the ship emptied and cleaned the tanks with live steam, and the ship's officers informed the contractors' servants that the pump in one of the tanks was ready to be disconnected, the workmen were not negligent in assuming that they could proceed with freedom from danger as to matters which officers of the vessel or those furnishing the place for the work might have made safe.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 84.*]

3. SHIPPING (§ 84*)—REPAIRS—LIABILITY OF CONTRACTORS.

Where the servants of contractors for repairs on a tank steamer were injured by an explosion of gas therein, the contractors were responsible for the ordinary risks which they should have guarded against for the purposes of their own work, but were not responsible for hidden risks or unascertainable dangers which the officers of the vessel should have anticipated.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 84.*]

4. SHIPPING (§ 84*)—REPAIRS—DANGERS—NEGLIGENCE OF VESSEL.

A tank steamer having contracted for repairs to certain of its tanks attempted to clean them with live steam, and, after having done so, the contractors' servants appeared, and were informed that the pump in one of the tanks was ready to be disconnected. While doing this work, with the aid of an open light, oil ran out from some portions of the pump, resulting in an explosion of gas by which libelant was injured. *Held* that, the ship having undertaken preparations for the work, the contractors were only responsible for the method of doing the work in the light furnished them, and that the ship was negligent in permitting the contractors' servants to perform the work with open lights without warning.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 84.*]

5. DAMAGES (§ 132*)—PERSONAL INJURIES—AMOUNT OF RECOVERY.

Libelant, a steam fitter, was injured in an explosion on a vessel while engaged in repairing the same. His hands and lower arms were so burned that he was unable to work from November until April, and at the trial he had injuries resembling scars over the back of his hands, fingers, and lower arms. The muscles of his hands and lower arms were so affected that he could not thereafter grip the tools necessary in following his trade, but, after his recovery, he was enabled to obtain the same wages by acting as a foreman for his employers. He suffered considerable pain, and his injuries appeared to be permanent. His physician's expenses amounted to $150. *Held*, that he was entitled to recover $1,650.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 132.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Admiralty. Libel by James W. Dalton against the steamship J. M. Guffey. Decree for libelant.

Hirsh & Rasquin (Hugo Hirsh, of counsel), for libelant.
James J. Mahoney, for claimant.

CHATFIELD, District Judge. The steamer J. M. Guffey is used for the carrying of oil in six tanks, each of which is connected by steam pumps with discharge and intake supply pipes. She burns oil for fuel, and is so arranged that No. 6 tank can be connected with the engine for supplying the fuel oil, if necessary.

In the year 1908 she arrived at the port of Philadelphia, in the month of October, and, after unloading her cargo, she came up by way of the Atlantic Ocean, and while at sea cleaned out the five empty oil tanks by steam. Some crude oil was stored in No. 6 tank for fuel on the voyage. Upon arriving at Gravesend Bay this tank was also cleaned out with live steam, the balance of the fuel oil having been pumped into a barge before the steam was turned in. The testimony of the various witnesses for the ship, including the experts, shows satisfactorily that the tanks were thoroughly and properly cleaned, and there seems to have been no negligence or carelessness in so far as the methods of doing what was done are concerned. Certain repairs were to be made and the cleansing of the tanks was preparatory to that work, in which the use of lights and hot riveting necessitated the removal of all inflammable material. The vessel was towed to the wharf and a number of workmen, of whom the libelant was a pipe fitter and repairer, went to work on the various parts of the ship requiring attention. In particular one of the pumps was to be shifted or lowered, and upon the 11th day of November, 1908, the libelant, in company with another pipe fitter and with three helpers or apprentices, went down to disconnect this pump at about 9 in the morning. This was the first job which these men had attempted to do upon that day, and on going upon the vessel they communicated with one of the men, who turned out subsequently to be an assistant engineer (the chief engineer being on the vessel, but not having anything to do with these conversations), to learn if things were in readiness for them to disconnect the pump in question. The testimony of the libelant and of these witnesses is to the effect that they asked whether it would be all right to take a light into the hold, it appearing that the place where the work had to be done was not absolutely dark, but that artificial light was needed in order to disconnect this pump; while the assistant engineer in question testified that the men asked him if the pump was ready to be disconnected, and that he spoke about going down after he had finished his breakfast, but that they did not make specific inquiry about the use of lights.

It appears from the testimony that electric torches were used by the officers and men upon the vessel, and that signs prohibited smoking and uncovered lights. It also appears that the vessel did not furnish any of these electric lights or other means of illuminating the place where the work was to be done, but left that to the men making the repairs. Three of the five workmen stopped upon a grating or pas-

sageway at the foot of the ladder leading into the space where the pump was located, while the libelant and another workman went down below this grating into the space immmediately around the pump, and, using an open gasoline torch, disconnected the pipe, when water, and later a dark brown liquid, ran out of some portion of the pump. The gas rising from this liquid became ignited, and an explosion resulted which filled the entire space with flames, which burned for some short time. The three men upon the grating succeeded in getting out without serious injury. The libelant and the man who was below were burned; the libelant being incapacitated for work from November until April. He still has injuries resembling scars over the back of his hands and fingers and lower arms. The muscles of his hands and lower arms are affected to such an extent that he cannot grip the tools necessary in following his trade, but since April, 1909, he has been enabled to obtain the same wages by acting as a boss or foreman of the men engaged in the work for his old employers, and has therefore not lost his wages since that time. The injuries, however, to the muscles and skin of his hands and forearms appear to be permanent. His expenses for physician were $150. He, of course, suffered considerable pain.

The only questions in the case are whether any negligence was shown on the part of the officers of the ship, and whether the libelant was guilty of contributory negligence in undertaking to do the work which he did with an open light, in view of the risks which he should have anticipated and guarded against in the light of his occupation and experience. As has been said, no negligence is shown in the general condition of the ship or its readiness for the making of the repairs. The testimony shows that no amount of cleansing or steaming could entirely remove all possibility of the formation of gas or the secretion of inflammable liquid in the internal parts of such a pump, and in the joints or corners of the pipes and tanks the witnesses agree that gas may form even after cleansing with live steam. The libelant knew that this might happen. He himself testified that the reason he asked whether the pump was ready to be disconnected was because he knew that it would be dangerous to enter this space with an open light unless all of the oil and gas had been removed. The officers of the vessel also knew of these dangerous conditions and of what work would be necessary in uncoupling the pump. The risks in connection therewith were something that the vessel was bound to obviate, if possible, or else give warning to those who might be subject to such danger. The workmen or the contractors who were employing these workmen must be held to the use of reasonable care with reference to the sort of work which they undertook to do, and in the light of what experience would show would be reasonable care in order to obviate the dangers that might be anticipated.

The case comes down finally to a determination of whether pipe fitters, sent to disconnect a pump, which they knew had been used for the pumping of oil, and which involved danger if any gas or oil were present when open lights were used, were bound to use precautions or tests, in spite of a representation that things were safe. In view of the preparations made by the ship for the repairs, the possibility of

using lights and red hot materials in the various parts of the tanks under repair, and the safety of the apparatus after the treatment with live steam, unless some unforeseen or inexplicable collection of gas occurred, it would not seem to have been negligence for these workmen to assume that if the pump in question was said to be in readiness to be disconnected, and if the officers of the vessel allowed them to go to work upon it without any warning, they could proceed with freedom from danger as to matters which the officers of the vessel or those furnishing the place for the work might have made safe.

On the other hand, it does not seem to be advisable to excuse the officers of a vessel who have knowledge of its construction and its particular dangers and conditions from all responsibility to those who may be called upon to do work merely because they have made a contract to have certain work done, and turned the vessel over to the people who are to do the work for that purpose. The contractors in this case were responsible for the ordinary risks which they should have guarded against for the purposes of their own work. They are not responsible for hidden risks or the unascertainable dangers that the officers of the vessel should anticipate. It would seem that the removal of this pump involved a danger of that sort. A warning not to use open lights, or a direction not to do the work until the engineer could see how it was to be done, was called for both from the standpoint of the safety of the men and of the vessel itself. Ordinary signs against smoking and lights had no significance at this time. And it would seem to be negligence for the officers of the vessel to assume that contractors could or would safely guard against all dangers in such work, as if these contractors understood the necessary dangers as well as the officers of the ship itself.

If the vessel had been entirely turned over to the contractors, or if the work in question had been in the hands of the contractors, so that all preparation for the work and all responsibility for the conditions under which the work was to be undertaken rested upon the contractors, then the ship would not be responsible. But in the present instance the preparation was done by the ship. The place at which the work was to be done was furnished and its condition established by the ship, and the only responsibility upon the contractors was the method of doing the work in the light that was furnished them. The libelant may recover $1,650 and costs.